STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiff,
C. FINLEY and CLASS MEMBERS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF CITY OF LOS ANGELES AND COUNTY OF LOS ANGELES, WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY C. FINLEY, *etc.*,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO M. CARVALHO, GEORGE McKENNA, MONICA GARCIA, SCOTT SCHMERELSON, NICK MELVOIN, JACKIE GOLDBERG, KELLY GONEZ, TANYA ORTIZ FRANKLIN, BENNETT KAYSER, JEFFERSON CRAIN, LESLIE RAMIREZ, GLENN BESUNDER, CHRISTOPHER STEVENS, AARON PISARZEWICZ, and TEN UNKNOWN NAMED DEFENDANTS, 1-10,<br><br>Defendants. | **COMPLAINT**<br><br>(To Prevent LAUSD and its police from inflicting Negative Eugenics' Against Poor People, Civil Rights Violations, RICO Violations, and Fraud)<br><br>**CLASS ACTION ALLEGATIONS**<br><br>**JURY DEMAND** |

1

Plaintiff makes the following allegations, on information and belief, on behalf of plaintiff and of putative class members, in support of the this complaint:

## JURISDICTION AND VENUE

1. Plaintiff, **C. FINLEY**, who is a Black person, and class members (hereinafter referred to collectively as "plaintiffs") assert federal claims, under 42 U.S.C. § 1983 (civil rights) and 18 U.S.C. § 1961-64 (RICO) against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of the federal claims, and defendants' conduct affects and interferes with interstate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

3. Plaintiff and class members are un-housed persons[2] who live and stay in vehicles and who number in the thousands; and defendants are **ALBERTO M.**

---

[2] Federal law defines the terms "homeless" or "homeless individual" or "homeless person" to include:

**(1)** an individual or family who lacks a fixed, regular, and adequate nighttime residence;

**(2)** an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

**(3)** an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

**(4)** an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;

**(5)** an individual or family who--

**CARVALHO,** LAUSD superintendent of schools, **GEORGE McKENNA, MONICA GARCIA, SCOTT SCHMERELSON, NICK MELVOIN, JACKIE GOLDBERG, KELLY GONEZ, TANYA ORTIZ FRANKLIN, BENNETT KAYSER, JEFFERSON CRAIN,** LAUSD board members and associates; **LESLIE RAMIREZ,GLENN BESUNDER, CHRISTOPHER STEVENS, AARON PISARZEWICZ,** LAUSD chiefs of police; and **TEN UNKNOWN NAMED DEFENDANTS, 1-10** (all of whom are referred to collectively as "defendants"), and the **UNKNOWN NAMED DEFENDANTS,** whose true identities presently are unknown, who participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are

> **(A)** will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by--
> **(i)** a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;
> **(ii)** the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or
> **(iii)** credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;
> **(B)** has no subsequent residence identified; and
> **(C)** lacks the resources or support networks needed to obtain other permanent housing . . . .

42 U.S.C. §11302 (a).  Plaintiff and class members are within the definition of this section, and chose to call themselves "un-housed," because "homeless" had become a pejorative term.

persons and/or entities whose true names presently are unknown, and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions to post no parking placards, as set forth hereinbelow.

4. Defendants each and all are sued in their individual capacities, and, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), all defendants are sued in their official capacities only.

5. Plaintiff and class members all reside in vehicles, as described hereinabove, and use those vehicles for both intrastate and interstate travel.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies and enforcement of government ordinances, and in running and administering the LAUSD and parking enforcement, and in the wrongful conduct set forth hereinbelow.

## ALLEGATIONS COMMON TO EACH COUNT

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant in their individual capacities were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. LAUSD police officers enforce parking ordinances and regulations.

10. In doing this they issue parking citations and warnings and attempt to have vehicles towed away.

11. Also, in doing this, on Wed., Jan. 14, 2022, at 11:05 a.m., Finley was awakened when there was a loud banging on the door of the RV in which she resides, and when she awoke, she saw two LAUSD police who were outside the RV door, and one of them said to her "You better be packing your fucking shit because we are going to tow this [RV] soon," and when she told them that she would call her attorney, which she immediately did and they heard her on the telephone making that call, they both got back in their car and drove off. Declaration of Chrystal Finley, Doc. 171, in 2:21-cv-06003-DOC. *See also ibid.*, Declaration of Trent Wikoff, and video tape already provided to court. These officers returned and did the same thing on the evening of Fri., Jan. 21, 2022, and a video of that conduct has been provided to the court, in 2:21-cv-06003-DOC.

12. The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution prohibit the threatening of and/or imposition of penalties for merely being on, including sitting, sleeping, lying, or parking vehicles on public property, for homeless individuals who cannot obtain permanent shelter, and also prohibit the criminalizing of homelessness.

13. Sitting, lying, and sleeping are defined as acts or conditions, that are universal and unavoidable consequences of "being human," as is parking a vehicle that is one's only means of "housing" on a public street.

14. The conduct of parking and living in any vehicle, including an oversize vehicle, is conduct that is involuntary and inseparable from the status of being unhoused -- they are one and the same, given that human beings are biologically compelled to rest, whether by sitting, lying, or sleeping.

15.  As a result, just as the state may not criminalize the state of being "homeless in public places," the state may not "criminalize conduct that is an unavoidable consequence of being homeless -- namely sitting, lying, or sleeping on the streets."

16.  So long as there is a greater number of homeless individuals in the City and/or County of Los Angeles than the number of available beds in their shelters, which presently is the case, defendants may not and cannot threaten, extort, penalize, or prohibit, or threaten or attempt to do so, unhoused  individuals, for involuntarily being in, parking in, sitting, lying, and sleeping on public property.

17.  As long as there is no option of sleeping indoors, LAUSD and defendants may not criminalize indigent, homeless people for being outdoors, parking the vehicles in which they exist on public streets, sleeping outdoors, on public property, based on the false premise they these human beings had any choice in the matter.

18.  Resisting the need to be somewhere, to eat, to sleep, or to engage in other life-sustaining activities is impossible. Avoiding public places when engaging in these otherwise innocent conducts is impossible: as long as the unhoused plaintiff and class members do not have a place where they can lawfully be, the challenged ordinance, as applied to them, effectively punishes them for something for which they may not be convicted under the Fourth and Eighth Amendments, and hence, the Fourteenth Amendment, to wit, sleeping, eating, parking their vehicles, and other innocent conduct, so that the challenged ordinance, as applied against the homeless is unconstitutional.

19.  The ticketing and placement of notices by LAUSD unconstitutionally criminalizes the simple act of being outside on public property, when one has nowhere else she or he can be.

20.  A governmental entity and/or its officials may not lawfully or constitutionally criminalize such behavior, consistently with the Fourth and Eighth

Amendments, and hence the Fourteenth Amendment, when no sleeping spaces are practically available in a sufficient number of shelters in the area.

21. So long as there is a greater number of homeless individuals in the City and County of Los Angeles than the number of available beds in shelters, for the unhoused, DHP and defendants may not legally enforce an parking ordinances against unhoused individuals for involuntarily parking, being, sitting, lying, and/or sleeping in a public place.

22. An ordinance violates the Fourth and Eighth Amendments, and hence the Fourteenth Amendment, insofar as it imposes criminal sanctions against unhoused  individuals, for sleeping outdoors or parking their vehicles where all others legally are permitted to park, on public property, when no alternative shelter is available to them.

23. There is no rational basis to prohibit parking any vehicle, including oversize vehicles, or ticketing or warning them that their vehicles would be "removed."

24. All of these actions by defendants were done in concert with others presently unknown, conspiratorially, and were both attempts to do and the doing of things that constitute fraud, extortion under both state and federal law, and which obstruct justice, all as set forth more fully hereinbelow.

25. Defendants' actions are a form of government-sanctioned eugenics[3], to alter, by government edict -- here, a parking citations and warnings of vehicle removal, a specific population that is disfavored by society and by government.

---

[3] "Eugenics" (/juːˈdʒɛnɪks/ yoo-JEN-iks; from Greek εὐ- "good" and γενής "come into being, growing") is a set of beliefs and practices that aim to improve the genetic quality of a human population, historically, and here, by excluding people and and/or groups of people judged to be inferior, or promoting those judged to be superior.  In recent years, the term has seen a revival in bioethical discussions, on the usage of new technologies, such as CRISPR (a gene therapy

26.  In general, eugenics is the practice of arranging a human population to increase or to decrease the occurrence of characteristics regarded as desirable or undesirable.

27.  The American eugenics movement was formed during the late Nineteenth Century and continued as late as the 1940s, and to a much lesser extent into the late 20th Century.[4]  The American eugenics movement embraced negative eugenics, as a purported method of improving the human race, and was increasingly discredited as unscientific and racially-biased during the 20th century, especially after the adoption of its doctrines by the Nazis (in order to justify their treatment of Jews, disabled people, and other minority groups). Incredibly, eugenics was *not* invented by the Nazis, but rather was first employed by "scientists" in New York, principally Charles Benedict Davenport, a Brooklyn-born, Harvard biology professor, and anti-miscegenanistic, who believed that race determined behavior.  That is, the Nazis got eugenics from the Americans.  It is important to recognize that, in America, eugenics was and is a movement used to

technique) and genetic screening, with a heated debate on whether these technologies should be called eugenics or not.

[4]  Many Americans, especially those born after the WWII, Baby Boomers, and post-Baby Boomer generations, incorrectly believe that Stanford Univ. Professor William Bradford Shockley, Jr. was the father of eugenics.  He was not.  In the 1970s, Shockley contended that a higher rate of reproduction among the less intelligent was having a dysgenic effect, and that a drop in average intelligence would ultimately lead to a decline in civilization. He also claimed that blacks were genetically inferior to whites on an intellectual level -- a view held by the National Football League until June 2021, as a means for denying brain-damaged, Black former players equal compensation to White players in the brain damage class action settlement. (Shockley was a candidate for the Republican nomination in the 1982 United States Senate election in California.  He ran on a single-issue platform of highlighting the "dysgenic threat" of some racial groups, including African-Americans, to American society.)

reduce an undesired population -- as defendants here use their City of Los Angeles ordinance 80.69.4, to push racist, classist, and ableist ideals, rather than a movement that explicitly worked toward the improvement of the human race, against unhoused persons, who are "an undesired population." *See also*, involuntary sterilization, lobotomization, and William Sheldon's somatotyping, all also pioneered in America.  The English-language term "eugenics" translates to "well-born" from the Greek word, "*eugenes*."  Eugenics reinforces the prejudices of the time by deeming those with desirable genetic traits such as White, of higher economic status, and healthy. On the other hand, those with undesirable traits are identified as non-White, of lower economic status, or  physically or mentally disabled.

28.  Defendants are practicing modern-day eugenics against plaintiff and class members. *See also LA Alliance for Human Rights v. City of Los Angeles*, 2:20-cv-02291-DOC-(KESx), Doc. 227 (04/20/21).

29. Plaintiff and class members sue only for such actions that are consistent with the Eleventh Amendment to the United States Constitution.

30. Incorporated herein by this reference are all of the UTUBE links and the contents of those links previously provided to this court in 2:21-cv-6003-DOC, that substantiate the wrongful conduct of LAUSD police against plaintiff.

31.-99.  Reserved.

### COUNT 1
**(Fourteenth Amendment, Equal Protection Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)**

100.  The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state action that discriminates against a suspect class of persons, and makes a state governmental unit responsible for the equal protection

9

of its citizens, and provides that "nor shall any state . . . deny to any person within

its jurisdiction the equal protection of the laws.

100a.  The Equal Protection Clause contains the right of the people to be

exempt from unfriendly legislation, exemption from legal discrimination that

imply an inferiority in civil society, and which lessen the enjoyment of rights

which others enjoy.

100b.  Defendants subject ordinance violated plaintiff's and class members'

right to equal protection of the laws because it is legislation that is unfriendly to

them since it is aimed only at them and at no other class of persons, it subjects

only them to legal discrimination -- indeed, it cannot be contested that it is only

them against whom it discriminated, it implies their inferiority in civil society, and

it lessens their enjoyment of rights which others enjoy.

**COUNT 2**
**(*Monell* Violations, against all defendants, in their official capacities, 42**
**U.S.C. § 1983)**

101.  Defendants' wrongful conduct under of color of law occurred

so that each defendant knowingly, grossly negligently, recklessly, and with

deliberate indifference to the rights allegedly violated, caused to come into being,

maintained, fostered, condoned, approved of, either before the fact or after the

fact, ratified, and/or took no action to correct, an official policy, practice,

procedure, or custom of permitting the occurrence of the categories of wrongs set

forth in the immediately-preceding Count, and/or improperly, inadequately, with

deliberate indifference to the constitutional or other federal rights of persons,

grossly negligently, with reckless disregard to constitutional or other federal

rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or

to take corrective action with respect to themselves and/or their personnel with

respect to the types of wrongful conduct alleged in this pleading, so that each one

of them is legally responsible for all of the injuries and/or damages sustained by

plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 3
**(Conspiracy, against all defendants, in both their individual and official capacities 42 U.S.C. § 1983)**

102. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 4
**(Fourteenth Amendment, Due Process Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)**

103. The Due Process Clause of the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

103a. The defendants' behavior alleged herein is so egregious, so outrageous, that it fairly may be described as shocking to the conscience, and also it is arbitrary and capricious action by the government: it is an exercise of power without any reasonable justification or legitimate governmental purpose: plain and simple, it is government bullying of those who are least able to defend themselves; it violates the decencies of civilized conduct in a civilized society; it is brutal and offensive, and it does not comport with basic concepts of fair play and decency, so that it violates plaintiff's and class members' substantive due process rights, because it is the government using its vast power arbitrarily and oppressively.

## COUNT 5
**(*Monell* Violations, against all defendants, against all defendants, in their official capacities 42 U.S.C. § 1983)**

104.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 6
### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

105. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 7
### (Fourteenth Amendment, Privileges and Immunities Abridgement Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

106.  The Privileges and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."

106a.  California Welfare & Institutions Code §  17000 provides that

> every city . . . shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein . . . .

106b.  This state law provides the substance of a privilege and immunity enjoyed under state law to plaintiff and class members, and defendants' conduct violates plaintiff's and class members' Fourteenth Amendment privileges and immunities rights (and this as well violates plaintiff's and class members' rights to both equal protection and to due process).

## COUNT 8
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

107.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 9
### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

108. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 10
### (Eighth Amendment, Cruel and Unusual Punishments Infliction Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)

109. The Eighth Amendment Cruel and Unusual Punishment Clause provides that "nor cruel and unusual punishments [may be] inflicted."

109a. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the imposition, or threat to impose, penalties for sitting, or lying outside, or parking a motor vehicle on a public street, by unhoused persons who cannot obtain shelter, and whether these activities are defined as acts or conditions, they are inseparable from status, they are universal and unavoidable consequences of being human -- they are one and the same thing, and are involuntary conduct that is inseparable from status, because human beings are biologically compelled to rest, whether by sitting, lying, or sleeping, and all of these things must occur some place, here in vehicles banned by the subject ordinance.

109b. The state may not criminalize and punish, threaten to punish, or attempt to punish the state of being unhoused in public places, nor may it criminalize conduct that is an unavoidable consequence of being unhoused.

109c. As long as there is no option of sleeping indoors, defendants may not criminalize indigent, unhoused persons for being outdoors, on public property, like streets, on the false premise that that they had a choice in the matter.

109d.  Resisting the need to eat, sleep, or engage in other life-sustaining activities, or parking one's motor vehicle in order to be able to do these things, is impossible.

109e.  Avoiding public streets when engaging in this otherwise innocent behavior also is impossible.

109f.  Unhoused persons who must sleep in their vehicle may not be punished, without the punishment being cruel and unusual, because such persons may not be convicted under the Eighth Amendment for innocent conduct.

109g.  Sleeping in a public place as applied to unhoused persons is unconstitutional.

109h.  Here, defendants' application of parking restrictions and ordinances criminalize conduct that is not criminal, and thus is unconstitutional.

109i.  An ordinance that makes the use of public property as a temporary or permanent place of dwelling, lodging, or residence, for storage of personal belongings, for cooking, or using temporary structures -- such as vehicles, or as a living accommodation, or any of these activities in combination with one another, at any time between sunset and sunrise, is unconstitutional.

109j.  The subject LAUSD conduct is aimed only at unhoused persons who live in their vehicles, campers, and RVs, and, as such it is unconstitutional.

## COUNT 11
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

110.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice,

procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 12
### (Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983)

111. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 13
### (Eighth Amendment, Excessive Fines Imposition Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)

112. The Eighth Amendments' Excessive Fines Clause provides that "nor shall excessive fines [be] imposed."

112a. A fine is "excessive" if it is not proportional to and related to the gravity of the offense that it is designed to punish.

112b. The factors to be considered are the nature and extent of the underlying offense (none), whether the underlying offense is related to other illegal activities (none), whether other penalties may be imposed for the offense (none), and the extent of the harm caused by the offense (none). Here, defendants

created and enforce parking to keep rich, habitated folks, who don't want to be
bothered by seeing poor, unhoused folks who are forced to live in vehicles, and
none of the four, evaluative factors is applicable, so that the ordinance and its
enforcement -- by towing a away an offending vehicle and thus depriving a poor
person or her or his home, is both unfounded, draconian, and unconstitutional.

112c.  The horror of a rich person having to endure seeing a poor person's
habitated camper or RV, or, indeed, the actual poor person, is not a legitimate
reason for enforcement of the subject ordinance.  It is an ugly, neighborhood
beautification project.

### COUNT 14
**(*Monell* Violations, against all defendants, in their official capacities, 42
U.S.C. § 1983)**

113.  Defendants' wrongful conduct under of color of law occurred
so that each defendant knowingly, grossly negligently, recklessly, and with
deliberate indifference to the rights allegedly violated, caused to come into being,
maintained, fostered, condoned, approved of, either before the fact or after the
fact, ratified, and/or took no action to correct, an official policy, practice,
procedure, or custom of permitting the occurrence of the categories of wrongs set
forth in the immediately-preceding Count, and/or improperly, inadequately, with
deliberate indifference to the constitutional or other federal rights of persons,
grossly negligently, with reckless disregard to constitutional or other federal
rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or
to take corrective action with respect to themselves and/or their personnel with
respect to the types of wrongful conduct alleged in this pleading, so that each one
of them is legally responsible for all of the injuries and/or damages sustained by
plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't
of Social Services* and its progeny.

## COUNT 15
### (Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983)

114. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 16
### (Right to Travel Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)

115. The right to travel, both intrastate, interstate, and intra-municipal, is both a federal right and a state right, which state right has become a part of the federal right to substantive due process of law, and is a basic human right, and as such is a right implicit in the concept of a democratic society that is one of the attributes of personal liberty under the common law.

115a. There is a California constitutional, substantive right to travel, and it recognizes the federal right to interstate travel -- the basic right to go from one place to another, and both state and federal courts recognize the right to travel as a fundamental right that is entitled to constitutional protection, under *both* state and federal law.

115b. The right to intrastate travel, within a municipality, is a federal right, the enforcement of which is the § 1983 remedy, and also it is a federal right because it is incorporated in the substantive Due Process Clause of the Fourteenth Amendment, the enforcement of which also is the § 1983 remedy, and therefore, plaintiff and class members may enforce their state right to travel under § 1983. Driving and parking a motor vehicle are inherent parts of the right to travel, and by posting their no parking placards, defendants have unconstitutionally infringed on plaintiff's and class members' rights to travel.

**COUNT 17**
**(*Monell* Violations, against all defendants, in their official capacities, 42
U.S.C. § 1983)**

116.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

**COUNT 18**
**(Conspiracy, against all defendants, in their official capacities, 42 U.S.C. §
1983)**

117. All defendants and each of them understood and agreed that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

118.-141.  Reserved.

**COUNT 19**

**(Racketeer Influenced and Corrupt Organizations, RICO, for Fraud, Extortion, Under Both State and Federal Law, and Obstruction of Justice, against all defendants in both their individual and official capacities)**

142.  By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, with a threat of continued racketeering activity, of fraud, extortion, under both state and federal law, and obstruction of justice, and continue to commit fraud, extortion, under both state and federal law, and obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute, as set forth hereinbelow.

## Rico Predicate Acts

143.  **Fraud**

The fraud occurred as follows:  defendants made the material misrepresentation to the public, including plaintiff and class members, that it was constitutionally-permissible to issue parking citations and warnings of vehicle removal, when that representation was false, defendants intended that plaintiff and class members rely on it, plaintiff and class members have, in fact, relied on it, and plaintiff's and class members' reliance on it has harmed and damaged plaintiff and class members, who have been unable to and who have not parked their vehicles in which they live in the posted areas.

144.  **Extortion**  The extortion occurred as follows:  defendants, through the illegal placement of parking citations and warnings of vehicle removal, have threatened plaintiff and class members that were they to park their vehicles in which they live that their vehicles would be towed away and penalties would be

imposed on them, and that their vehicles could be forfeited, so that because of this extortionate threat, plaintiff and class members have been extorted not to park their vehicles in contravention of the warnings of vehicle removal.

145. **Obstruction of Justice** The obstruction of justice occurred by defendants preventing plaintiff and class members from exercising their federal constitutional right, as set forth hereinabove.

146. Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the City of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises.

147. Each and all of defendants' activities affect interstate commerce as well as intrastate and interstate travel.

148. Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

149. Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

150. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, mail fraud, wire fraud, fraudulent concealment, and obstruction of justice, and defendants' defense of the

21

instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that those who may participate in the defense of this action may make themselves liable under RICO.

151.  Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

152.  The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 35 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

153.  At least one hundred RICO predicate acts have occurred.

154.  The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and participants, they are not isolated events, but are both continuous and systemic, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

155.  The activities led to defendants' control of and acquisition over the enterprises, and LAUSD, and resulted in the injuries to plaintiff and class members, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

156.  By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial

employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

157.  The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiffs, as alleged herein.

158.  The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

159.  Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued and continue to do so with the aid and assistance of co-conspirators

160.  Defendants' actions involve many thousands of City of Los Angeles unhoused residents and constitute a pattern of racketeering activity and the predicate acts as set forth hereinabove.

161.-199.  Reserved.

## COUNT 20
### (Violation of *Jus Cogens* International Law)

200.  Defendants' actions, as set forth hereinabove, are in clear violation of and are prohibited by the *jus cogens,* peremptory norms of international law that, among other things, prohibit official use of all cruel and unusual punishment.

201. Such *jus cogens,* peremptory norms are the law of the land in the United States of America, and plaintiff and class members are entitled to damages for the harm caused to them by defendants' violations of *jus cogens*, peremptory norms, and to declaratory and injunctive relief, because the Ninth Circuit, in *Siderman v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), has held these prohibitions to be *jus cogens* norms. That is, plaintiff and class members claim defendants are liable to plaintiff and class members for subjecting them to cruel and unusual punishment, in violation of *jus cogens* peremptory norms of international law, whose violation, in turn, is a violation of the law of the United States of America, under the Supremacy Clause of the United States Constitution.

## COUNT 21
### (Violation of *Jus Dispositivum* International Law)

203. Defendants' actions, as set forth hereinabove, are in clear violation of the *jus dispositivum* treaty obligations entered into by the United States of America, and which obligations, pursuant to Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), are "the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding."

204. The specific treaties whose provisions prohibit cruel and unusual punishments, to which the United States of America is a signatory, and whose provisions were violated by defendants, are: Universal Declaration of Human Rights, G.A. Res. 217 (A) (III), U.N. Doc. A/810 at 71 (1948); the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452 (1975);

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, annex 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51, art. 1 (1984); Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, G.A. Res. 43/173, 43 U.N. GAOR Supp. (No. 49), U.N. Doc. A/43/49, at 297, Principle 5 (1988); the American Convention on Human Rights, O.A.S. Treaty Series No. 36, at 1, OEA/Ser. L./V/II.23 doc. Rev. 2, Art. 5); International Covenant on Civil and Political Rights, G.A. Res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, Art. 7; and, the European Convention for the Protection of Human Rights and Fundamental Freedoms, 213 U.N.T.S. 222, Art. 3, and by engaging in the conduct alleged, defendants violated those treaties and conventions, and thereby violated the laws of the United States of America, through the Supremacy Clause.

205.   By virtue of the violations of the provisions of these treaties, plaintiff and class members are entitled to recover nominal damages and punitive damages from defendants, and to declaratory and injunctive relief.

### COUNT 22
### (Fourth Amendment)

206. Defendants' actions violated the Fourth Amendment.

207.-272.  Reserved.

### CLASS ACTION ALLEGATIONS

273.  Plaintiff is a members of the discrete class of persons, whose defining characteristic is that they are unhoused persons who reside in vehicles in the City and County of Los Angeles.

274. This class contains at least 1,000 and as many as several thousand members, and the class is so numerous so that joinder of all members is impracticable.

275. There are only common questions of fact and of law with respect to all class members: they all are subject to being cited for parking violations by defendants and to abandoned vehicle warnings being posted on their vehicles by LAUSD.

276. The claims made by the representative party, plaintiff, are typical of the claims of each class member.

277. The representative of the class, plaintiff, fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both herself and through her zealous attorney.

278. Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the class, and defendants have acted and will continue to act on grounds generally applicable to every class member, and the class questions not only predominate but are the only questions that exist, and this action is the superior manner to other available methods for fairly and efficiently adjudicating the controversy.

279. Specifically, the class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the amount of damages, all of which are solely nominal and punitive, identification of class members, and providing actual notice to virtually all class members.

280. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & 23(b)(1)(A),(B)(1) and (3).

281. Although there would appear to be no notice requirement, the nature of the notice to be provided to class members would be that the offensive placards would be taken down.

**WHEREFORE**, plaintiff and class members request relief against each
defendant as follows:

1. Compensatory damages for all non-RICO violations, in sums in excess
of $75,000.00, exclusive of costs and interest;

2. Punitive damages, in a sum to be determined by a jury, and as a
percentage of the net worth of each defendant, in a sum sufficient to deter future
misconduct, and not less than $1,000,000.00 per defendant;

3. Damages for the RICO violations, and trebling of them;

4. Injunctive relief, according to law;

5. The costs of action and interest;

6. Attorneys' fees; and,

7. Such other relief as is just and proper.


### JURY DEMAND

Plaintiff demands trial by jury of all issues.

### YAGMAN + REICHMANN, LLP

By:  /s/  Stephen Yagman
**STEPHEN YAGMAN**

27